UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TIMOTHY P. RUJAN,

    Plaintiff,                                         Case No. 20-
                                                               Hon.

v.

SCHEURER HOSPITAL,

    Defendant.
_____/

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN L. KULA (P81913)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromar@mastromarcofirm.com
kkula@mastromarcofirm.com
_____/

**PLAINTIFF'S COMPLAINT & DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff, TIMOTHY P. RUJAN, by and through his attorneys, THE MASTROMARCO FIRM, and hereby complains against Defendant, SCHEURER HOSPTIAL, stating as follows:

**COMMON ALLEGATIONS**

1.    That Plaintiff is a resident of the County of Huron, State of Michigan and is domiciled in the State of Michigan.

2. That Defendant is a domestic nonprofit corporation authorized to conduct business and doing so in County of Huron, State of Michigan, and is domiciled in the State of Michigan.

3. That the amount in controversy exceeds the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of costs, interest, and attorney fees.

4. That this Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

5. That Plaintiff began working for the Defendant in approximately 1996 as a part-time emergency medical technician ("EMT").

6. That on or about May 1, 2002, Defendant hired Plaintiff as a full-time EMT.

7. That at all times during Plaintiff's employment with Defendant, Plaintiff performed his job duties in a satisfactory and/or an above-satisfactory manner.

8. That Plaintiff worked over forty (40) hours per week from the date of starting full time until his separation from the Defendant.

9. That in August 2018, Plaintiff met with Mr. Gregory Foy, Defendant's human resources director, and informed Mr. Foy that he (Plaintiff) had spoken to the Michigan Bureau of Employment Relations, Wage and Hour

Division, and was seeking back overtime pay that he believed was owed to him by Defendant.

10. That in response Mr. Foy asked the Plaintiff if he had filed a complaint with the Bureau (which he hadn't) and informed the Plaintiff that he (Foy) would have to contact the Defendant's attorney.

11. That in September 2018, Mr. Foy informed the Plaintiff that he was, in fact, owed back pay for overtime but it was going to take the Defendant additional time to sort out due to Defendant's poor recordkeeping regarding on call time for its EMT's.

12. That it is the responsibility of the Defendant to accurately track EMT on call time and actual calls for emergency runs.

13. That in October 2018, the Plaintiff spoke to Mr. Foy regarding the status of his owed back pay and Mr. Foy again told the Plaintiff be patient as the process was taking a long time due to Defendant's poor record keeping.

14. That Mr. Foy finally presented the Plaintiff with a check for approximately $800.00 in November 2018.

15. That when the Plaintiff told Mr. Foy that the check amount was incorrect, Mr. Foy responded with words to the effect of "I know that and I'm trying to figure it out just give me more time."

16. That the Plaintiff followed up with Mr. Foy again in December 2018

and was told words to the effect of "you're right we must pay you your stand by pay" but "all I've got to go on is the old schedules and it is going to be a nightmare to sort out all the time."

17. That on information and belief, in approximately early 2019, and in response to Plaintiff's inquiries regarding his missing overtime pay, Defendant altered the way EMT's employed by Defendant were to be paid in an effort to define the pay rules that would be in place moving forward.

18. That on February 14, 2019, Plaintiff received an email from Emergency Services Manager Louise Hunt explaining, in part, as follows: 1) that the "missed payments for 'call in' hours" still needed to be corrected; 2) Plaintiff was to direct his payroll questions only to his manager and not to human resources; and 3) all ambulance department employees were now required to print and approve their own timecards.

19. That in response, Plaintiff wrote back and explained that he found it "frustrating" that he was instructed to resolve his payroll problems himself and could not go to human resources. Further, he explained it was "frustrating and humiliating to have to b[e]g for [his] missed paid calls" when the fault lay with the Hospital.

20. That on or about the following day, February 15, 2019, Gregory Foy told the Plaintiff he would receive part of what he said was owed and that he would

be "paid the rest after Defendant figured it all out" or words to that effect.

21. That in approximately mid-March 2019, Plaintiff was presented with a check from Defendant in the amount of $15,000.00 and Ms. Hunt informed him that, although the check amount was still incorrect, Plaintiff had to sign a document for the check accepting that $15,000 amount fully compensated him for all his owed back pay.

22. That the Plaintiff refused to sign the document Ms. Hunt presented to him.

23. That on March 20, 2019, Plaintiff met with Mr. Foy and informed him the $15,000.00 check was not correct and Foy responded with words to the effect of "that is just what the lawyers came up with and any missing time could be calculated later but at the base pay rate" (i.e., not the standard overtime which was time and a half).

24. That, in fact, the $15,000.00 check was calculated using minimum wage as the base rate rather than Plaintiff's actual hourly rate or overtime rate of pay.

25. That Plaintiff, on average, worked approximately eighty (80) hours per week.

26. That Plaintiff worked said number of hours due to the necessities of his position.

27.     That Defendant had knowledge that Plaintiff was working in excess of forty (40) hours per week.

28.     That notwithstanding said knowledge, Defendant failed to compensate Plaintiff for overtime hours worked during the course of Plaintiff's employment.

29.     That Defendant further failed to keep and maintain adequate records of the actual hours worked by Plaintiff, including overtime hours.

30.     That the work performed by Plaintiff during overtime hours was of the same type normally performed by Plaintiff in the normal course of his job responsibilities and, therefore, was not volunteer work.

31.     That Defendant's actions constitute a failure to pay overtime compensation in violation of the Fair Labor Standards Act.

32.     That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer from unpaid overtime compensation.

33.     That Plaintiff further claims an equal amount of his unpaid overtime compensation as liquidated damages pursuant to 29 U.S.C. § 216(b).

34.     That Plaintiff hereby claims any and all legal and/or equitable relief, effecting the purposes of 29 U.S.C. § 215(a)(3), including, but not limited to, front pay damages and liquidated damages.

35.     That Plaintiff hereby claims all of the costs of the litigation, including reasonable attorney fees and witness fees, pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

### COUNT I – FAILURE TO PAY OVERTIME COMPENSATION IN VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 207

36. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 35 of his Common Allegations, word for word and paragraph for paragraph, as if fully restated herein.

37. That the Fair Labor Standards Act provides in relevant part:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

38. That Defendant hired Plaintiff as a salaried, non-exempt employee.

39. That Plaintiff's position does not meet the definition for any exemptions. *See* 29 C.F.R. § 541.100 *et seq*.

40. That Defendant failed to pay Plaintiff overtime pay as demanded by the Fair Labor Standards Act.

41. That Defendant willfully violated the Act's requirements to pay

Plaintiff's overtime pay.

42. That the willful nature of Defendant's violations of its requirement to pay overtime compensation are demonstrated by the following:

- In September 2018, Mr. Foy informed the Plaintiff that he was, in fact, owed back pay for overtime but it was going to take the Defendant additional time to sort out due to Defendant's poor recordkeeping regarding on call time for its EMT's;
- In November 2018, Mr. Foy finally presented the Plaintiff with a check for approximately $800.00. When the Plaintiff told Mr. Foy that the check amount was incorrect, Mr. Foy responded with words to the effect of "I know that and I'm trying to figure it out just give me more time;"
- On February 15, 2019, Gregory Foy told the Plaintiff he would receive part of what he said was owed and that he would be "paid the rest after Defendant figured it all out" or words to that effect;
- In approximately mid-March 2019, Plaintiff was presented with a check from Defendant in the amount of $15,000.00 and was informed that, although the check amount was still incorrect, Plaintiff had to sign a document for the check accepting that $15,000 amount fully compensated him for all his owed back pay; and
- On March 20, 2019, Plaintiff met with Mr. Foy and informed him the $15,000.00 check was not correct and Foy responded with words to the effect of "that is just what the lawyers came up with and any missing time could be calculated later but at the base pay rate" (i.e., not the standard overtime which was time and a half).

43. That Defendant either knew or showed reckless disregard for whether

its conduct was prohibited by the Act.

44. That Defendant's actions constitute a failure to pay overtime compensation in violation of the Fair Labor Standards Act, 29 U.S.C. § 207.

45. That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer from unpaid overtime compensation.

46. That Plaintiff further claims an equal amount of his unpaid overtime compensation as liquidated damages pursuant to 29 U.S.C. § 216(b).

47. That Plaintiff further claims attorney fees and the costs of this action pursuant to 29 U.S.C. § 216(b).

48. That Plaintiff further claims additional damages for Defendant's willful violation of the Act.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: September 2, 2020

By:   /s/ Victor J. Mastromarco, Jr.
VICTOR J. MASTROMARCO, JR. (P34564)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromar@mastromarcofirm.com

## DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, TIMOTHY P. RUJAN, by and through his attorneys, THE MASTROMARCO FIRM, and hereby demands a trial by jury on all of the above issues, unless otherwise expressly waived.

                                      Respectfully submitted,
                                      THE MASTROMARCO FIRM

Dated: September 2, 2020        By:   */s/ Victor J. Mastromarco, Jr.*
                                      VICTOR J. MASTROMARCO, JR. (P34564)
                                      Attorneys for Plaintiff
                                      1024 N. Michigan Avenue
                                      Saginaw, Michigan 48602
                                      (989) 752-1414
                                      vmastromar@mastromarcofirm.com